**IT IS ORDERED as set forth below:**

**Date: August 27, 2026**

**James R. Sacca**
**U.S. Bankruptcy Court Judge**

---

**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| In re:<br><br>WILLIAM CHARLES COURTRIGHT,<br><br>Debtor. | Case No. 25-56515-JRS<br><br>CHAPTER 7 |
| MELANIE E. DAMIAN, as Receiver of Todays Growth Consultant Inc.<br>Plaintiff,<br>v.<br><br>WILLIAM CHARLES COURTRIGHT,<br>Defendant. | Adv. Proc. No. 25-05170-JRS |

**ORDER DENYING PLAINTIFF'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

The issue before the Court is the application of the U.S. Supreme Court's decision in *Bartenwerfer v. Buckley*, 598 U.S. 69 (2023) and the doctrine of collateral estoppel to the Plaintiff's claim under 11 U.S.C. § 523(a)(2)(A) for actual fraud based on a federal district court judgment against the Debtor. This judgement was based on the Illinois Uniform Fraudulent Transfer Act and ordered the recovery of sales

commissions paid to the Debtor by a company operating a Ponzi scheme which the district court found the Debtor did not receive in good faith ignorance of the Ponzi scheme.

The issue arises in the Motion for Partial Summary Judgment (the "Motion") filed by Melanie E. Damian, as Receiver of Todays Growth Consultant Inc. (the "Receiver"), [Adv. Proc. Dkt. Nos. 18 & 19], on the Receiver's claim for actual fraud under § 523(a)(2)(A). [Compl., Adv. Proc. Dkt. No. 1; Mot. Summ. J. 1-2, Adv. Proc. Dkt. No. 19]. Specifically, the Receiver argues the doctrine of collateral estoppel applies to findings of fact and conclusions of law and a judgment entered against Mr. Courtright and his company Courtright Consulting by United States District Court Judge Thomas Durkin of the Northern District of Illinois. [Mot. Summ. J., Adv. Proc. Dkt. No. 19].

The Court has considered the Response to the Motion filed by William Courtright ("Mr. Courtright"). [Adv. Proc. Dkt. Nos. 20 & 21]. The Court has also considered the Reply, [Adv. Proc. Dkt. No. 23], filed by the Receiver and the Surreply [sic], [Adv. Proc. Dkt. No. 24], filed by Mr. Courtright. For the reasons stated herein, the Court **DENIES** the Motion.

## I. Facts

The parties focus on the findings of fact and conclusions of law, the supplement to the findings of fact and conclusions of law, and judgment entered by Judge Durkin of the Northern District of Illinois. [Pl.'s Statement of Material Facts ("Pl.'s SOMF") ¶¶ 5-7, 10, Adv. Proc. Dkt. No. 18; Def.'s Statement of Material Facts ("Def.'s SOMF")

¶¶ 7-9, 11, Adv. Proc. Dkt. No. 21]. However, the parties disagree as to what the findings of fact and conclusions of law and judgment establish and their applicability to this proceeding.

Judge Durkin entered his findings of fact and conclusions of law on October 2, 2024. [Pl.'s SOMF, Ex. A, which attached Judge Durkin's findings of fact and conclusions of law as Ex. B]. Judge Durkin noted in his findings of fact and conclusions of law that Kenneth Courtright—Mr. Courtright's brother—was convicted of wire fraud and bank fraud in connection with his operation of his company Todays Growth Consultant Inc. ("TGC") and that the Receiver was appointed as the receiver for TGC in an SEC enforcement action against TGC. [*Id.* at 1]. Judge Durkin also noted that the Receiver filed the case against Mr. Courtright, a former sales broker for TGC, and Mr. Courtright's company Courtright Consulting to recoup sales commissions TGC paid to Mr. Courtright and Courtright Consulting (collectively the "Defendants"). [*Id.*]. The Receiver alleged "these payments were fraudulent conveyances in violation of the Illinois Uniform Fraudulent Transfer Act, 740 ILCS § 160/5(a)(1)." [*Id.*]. There was a bench trial on the merits, and Judge Durkin's findings were by clear and convincing evidence. [*Id.* at 1-2].

Judge Durkin framed the issue before the court as follows:

> If Kenneth Courtright had actual intent to defraud TGC's creditors, then TGC's payments to William Courtright and Courtright Consulting were "fraudulent" under the terms of the statute and can be recouped by the Receiver. However, a "transfer or obligation is not voidable . . .

> against a person who took in good faith and for a reasonably equivalent value[.]"

[*Id.* at 5-6].

Concerning Kenneth Courtright and TGC, Judge Durkin found that

> Kenneth Courtright had actual intent to defraud TGC's creditors because clear and convincing evidence shows that TGC was a Ponzi scheme. . . . [T]here is no dispute that TGC was never able to satisfy the financial obligations it made to investors and was instead using new investor funds to pay obligations to earlier investors. This clearly demonstrates that TGC was a Ponzi scheme and permits the inference that TGC and Kenneth Courtright had actual intent to defraud TGC's creditors when it made the payments to Defendants.

[*Id.* at 9].

Regarding TGC's payments of sales commissions to the Defendants, Judge Durkin analyzed 740 ILCS § 160/9 which provides that a "transfer or obligation is not voidable . . . against a person who took in good faith and for a reasonably equivalent value." [*Id.* at 10]. Judge Durkin found that the Defendants had provided "reasonably equivalent value" for the sales commissions they received because "[w]hether or not William Courtright knew TGC was a Ponzi scheme, it is undisputed that he and his company generated more than $60 million in contracts for TGC." [*Id.* at 15].

However, Judge Durkin found that Mr. Courtright did not take some of the sales commissions from TGC in good faith because there came a time when he was on inquiry notice of TGC's potential fraud:

> As of November 3, 2017, when he received the email about 95% of TGC's websites being ignored, Bill was on inquiry

> notice regarding TGC's potential fraud. There is no evidence in the record, however, that Bill took action to investigate TGC's finances and business stability or sought to learn information that would support the promises he was making to TGC's investors. For that reason, the Court finds that all payments TGC made to Defendants after November 3, 2017, were taken by Defendants without good faith ignorance of TGC's fraud. As such, the transfers were fraudulent in violation of the Illinois Uniform Fraudulent Transfer Act and may be recouped by the Receiver.

[*Id.* at 19].

Judge Durkin subsequently entered a supplemental order for his findings of fact and conclusions of law on March 10, 2025. [Pl.'s SOMF, Ex. A, which attached Judge Durkin's findings of fact and conclusions of law supplemental order as Ex. C]. Judge Durkin noted that the court had found that "'all payments TGC made to Defendants after November 3, 2017, were taken by Defendants without good faith ignorance of TGC's fraud,' and as such 'the transfers were fraudulent in violation of the Illinois Uniform Fraudulent Transfer Act and may be recouped by the Receiver.'" [*Id.* at 1]. Judge Durkin concluded that the Receiver could recoup $1,346,268.05 from the Defendants. [*Id.* at 3]. A judgment was entered the same day against the Defendants for that amount. [Pl.'s SOMF, Ex. A, which attached the judgment as Ex. D]. Mr. Courtright did not appeal the judgment. [Pl.'s SOMF ¶ 9].[1]

---

[1] BLR 7056(a)(2) states in pertinent part:

> [t]he respondent to a motion for summary judgment must attach to the response a separate and concise statement of material facts, numbered separately, as to which the respondent contends a genuine issue exists to be tried. Response should be made to each of the movant's numbered material facts. All material facts contained in the moving party's statement that are not specifically controverted in respondent's statement are deemed admitted.

Mr. Courtright did not controvert the Receiver's statement of undisputed material fact number nine. Thus, it is deemed admitted.

Mr. Courtright filed for Chapter 7 bankruptcy relief on June 11, 2025. The Receiver filed an unsecured claim in the amount of $1,346,268.05. The Receiver also filed this adversary proceeding seeking to have her judgment declared nondischargeable pursuant to §§ 523(a)(2)(A) and 523(a)(19). The parties concluded discovery, and the Receiver filed her Motion.

## II. Discussion

### A. Legal standard for motion for summary judgment

Federal Rule of Bankruptcy Procedure 7056 states that Federal Rule of Civil Procedure 56 applies in adversary proceedings. Summary judgment shall be granted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "The substantive law applicable to the case determines which facts are material." *Hurston v. Anzo (In re Anzo)*, 547 B.R. 454, 463 (Bankr. N.D. Ga. 2016) (citation omitted). "For issues upon which the moving party bears the burden of proof at trial, he must affirmatively demonstrate the absence of a genuine issue of material fact as to each element of his claim on that legal issue." *Id.* at 463 (citation omitted). "A genuine issue of material fact exists when the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Ismael v. Roundtree*, 161 F.4th 752, 758 (11th Cir. 2025) (quoting *Quigg v. Thomas Cnty. Sch. Dist.*, 814 F.3d 1227, 1235 (11th Cir. 2016)).

Additionally, "[a]ll submitted evidence is viewed in the light most favorable to the nonmovant and all justifiable inferences are drawn in its favor." *Harris v. Wells*

*Fargo Bank N.A.*, No. 24-11138, 2025 U.S. App. LEXIS 16577, 2025 WL 1860290, at *1 (11th Cir. July 7, 2025) (citation omitted). The court may not weigh conflicting evidence or make credibility determinations. *Hairston v. Gainesville Sun Publ'g Co.*, 9 F.3d 913, 919 (11th Cir. 1993) (citation omitted). "The party moving for summary judgment has the initial burden of demonstrating through evidence that there is no genuine issue of material fact. The nonmovant must then rebut the movant with evidence of a genuine dispute." *Harris*, 2025 WL 1860290, at *1 (citation modified).

**B. The Receiver is not entitled to summary judgment on her § 523(a)(2)(A) claim because Judge Durkin's findings of fact and conclusions of law did not address whether Mr. Courtright possessed the fraudulent intent necessary for actual fraud under § 523(a)(2)(A).**

Judge Durkin's findings of fact and conclusions of law did not address whether Mr. Courtright possessed the necessary fraudulent intent for actual fraud under § 523(a)(2)(A). As will be explained below, the doctrine of collateral estoppel and the Supreme Court case *Bartenwerfer* do not resolve the issue of whether Mr. Courtright possessed the necessary fraudulent intent under § 523(a)(2)(A).

**1. Collateral estoppel**

"[T]he doctrine of collateral estoppel applies in a discharge exception proceeding in bankruptcy court." *HSSM # 7 Ltd. P'ship v. Bilzerian (In re Bilzerian)*, 100 F.3d 886, 892 (11th Cir. 1996) (citations omitted). The parties dispute whether federal or state collateral estoppel law should apply to the Illinois district court judgment. The Receiver cited *NBA Properties, Inc. v. Moir (In re Moir)*, 291 B.R. 887, 891 (Bankr. S.D. Ga. 2003) which applied the federal law of collateral estoppel. The Receiver maintains that each element of collateral estoppel is met. [Mot. Summ. J.

4-6, Adv. Proc. Dkt. No. 19]. Mr. Courtright cited *St. Laurent v. Ambrose (In re St. Laurent)*, 991 F.2d 672, 676 (11th Cir. 1993) which applied the elements of collateral estoppel under Florida state law. Mr. Courtright maintains that not all of the elements of collateral estoppel are satisfied in part because the issue Judge Durkin addressed is different than a § 523(a)(2)(A) claim for actual fraud. [Resp. 7-9, Adv. Proc. Dkt. No. 20].

The Illinois district court was exercising supplemental jurisdiction over the Receiver's claim under 740 ILCS § 160/5(a)(1).[2] The Court has not found an Eleventh Circuit decision which states whether a federal court deciding the collateral estoppel effect of a prior judgment of a federal court exercising supplemental jurisdiction should apply the federal law or state law of collateral estoppel. However, the Eleventh Circuit has made it clear that federal courts apply the state rule of collateral estoppel when a federal court's jurisdiction is based on diversity citizenship: "We hold that federal common law borrows the state rule of collateral estoppel to determine the preclusive effect of a federal judgment where the court exercised diversity jurisdiction." *CSX Transp., Inc. v. Gen. Mills, Inc.*, 846 F.3d 1333, 1340 (11th Cir. 2017); *see also Wheeler Bros., Inc. v. Jones (In re Jones)*, 611 B.R. 685, 693-94 (Bankr. M.D. Ala. 2020) ("[I]f the federal court's jurisdiction was based on diversity jurisdiction . . . courts must look instead to the applicable state's rules of collateral estoppel." (citation omitted)).

---

[2] *See* Def.'s SOMF, Ex. B ¶ 13, Adv. Proc. Dkt. No. 21 (containing the complaint filed in the Illinois district court action and alleging in paragraph 13 that jurisdiction is based on federal question jurisdiction and supplemental jurisdiction).

Other circuits addressing the issue of what collateral estoppel law applies to a federal judgment based on supplemental jurisdiction over a state law claim have held that the collateral estoppel law of the state in which the federal district court sits applies. *See Hatley v. Watts*, 917 F.3d 770, 777 (4th Cir. 2019) ("[W]hen a federal court exercises supplemental jurisdiction over a state law claim, federal common law governs the preclusive effect of the federal court's disposition of that claim. The federal rule of decision in such cases is to apply state preclusion law, unless the state preclusion law is incompatible with federal interests." (citations omitted)); *Marini v. Adamo (In re Adamo)*, 560 B.R. 642, 647 (Bankr. E.D.N.Y. 2016) ("W]hen a federal court reviews the preclusive effect of state law claims decided by a federal court exercising supplemental jurisdiction under 28 U.S.C. § 1367 in a federal question case, the reviewing court applies the law of the state in which the federal court exercising supplemental jurisdiction sat." (citation omitted)).

Although the Eleventh Circuit has not addressed what collateral estoppel law applies to a federal judgment based upon supplemental jurisdiction over a state law claim, the Court will apply the collateral estoppel law of Illinois to the Illinois district court judgment.[3] The elements to collateral estoppel under Illinois law are

> (1) the issue decided in the prior adjudication is identical with the one presented in the current litigation; (2) there

---

[3] For comparison purposes, the elements to collateral estoppel under federal law are

> (a) the issue in the prior action and the issue in the bankruptcy court are identical, (b) the bankruptcy issue was actually litigated in the prior action, (c) the determination of the issue in the prior action was a critical and necessary part of the judgment in that litigation, and (d) the burden of persuasion in the discharge proceeding must not be significantly heavier than the burden of persuasion in the initial action.

*In re Moir*, 219 B.R. at 891 (citation omitted).

> was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication.

*Lambert v. Riegle (In re Riegle)*, 665 B.R. 387, 391-92 (Bankr. C.D. Ill. 2024) (citing *Givens v. City of Chi.*, 234 N.E.3d 22, 36 (Ill. 2023)). However, even when the elements of collateral estoppel are met, "collateral estoppel should not be applied 'unless it is clear that no unfairness will result to the party sought to be estopped.'" *Id.* at 392 (quoting *Am. Family Mut. Ins. Co. v. Savickas*, 739 N.E.2d 445, 451 (Ill. 2000)).

The second and third enumerated elements of collateral estoppel are easily met. The Illinois district court judgment is a final judgment that was not appealed, and Mr. Courtright was a party to the Illinois district court case. However, as will be explained below, the first element is not met.

Concerning the first element,

> [f]or an issue to be identical, "the party sought to be bound must actually have litigated the issue in the first suit and a decision on the issue must have been necessary to the judgment in the first litigation." The application of estoppel "must be narrowly tailored to fit the precise facts and issues that were clearly determined in the prior judgment." Furthermore, "the judgment in the first suit operates as an estoppel only as to the point or question actually litigated and determined and not as to other matters which might have been litigated and determined."

*Givens*, 234 N.E.3d at 37 (citation modified).

Thus, the question is whether 740 ILCS §§ 160/5(a)(1) and 160/9, as Judge Durkin applied them to Mr. Courtright, are an identical issue to a claim for actual fraud under § 523(a)(2)(A). The Court finds they are not.

**2. 740 ILCS § 160/5(a)(1) and 11 U.S.C. § 523(a)(2)(A)**

As explained above, Judge Durkin found that the sales commissions paid by TGC to Mr. Courtright after November 3, 2017, were fraudulent in violation of the Illinois Uniform Fraudulent Transfer Act. Part of Judge Durkin's analysis focused on 740 ILCS § 160/5(a)(1) which states

> (a) A transfer made or obligation incurred by a debtor is fraudulent as to a creditor, whether the creditor's claim arose before or after the transfer was made or the obligation was incurred, if the debtor made the transfer or incurred the obligation: (1) with actual intent to hinder, delay, or defraud any creditor of the debtor.

Judge Durkin also analyzed 740 ILCS § 160/9, titled "Voidable transfers or obligations; rights of good-faith transferee." Subsection (a) states "[a] transfer or obligation is not voidable under paragraph (1) of subsection (a) of Section 5 against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee."

11 U.S.C. § 523(a)(2)(A) excepts a debt from discharge if it is "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by . . . false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." The Receiver's § 523(a)(2)(A) claim is based on actual fraud.

In order to prevail on a claim under § 523(a)(2)(A), the creditor must prove by

a preponderance of the evidence: (1) the debtor used false pretenses, or made a false representation, or committed actual fraud; (2) the creditor relied on the debtor's conduct; (3) the creditor's reliance was justified; and (4) the debtor's conduct caused the creditor's loss. *Harris v. Jayo (In re Harris)*, 3 F.4th 1339, 1344 (11th Cir. 2021) (citations omitted). Additionally, "[w]hile all of the elements apply whether a plaintiff asserts false pretenses, false representations, or actual fraud, 'the analysis of the first element varies depending on the cause of action asserted.'" *PennyMac Loan Servs., LLC v. Brown (In re Brown)*, 677 B.R. 154, 159 (Bankr. N.D. Ala. 2025) (quoting *Bank of Fayette Cnty. v. Hampton (In re Hampton)*, 550 B.R. 773, 792 (Bankr. E.D. Ark. 2016)). Lastly, "[e]xceptions to discharge are strictly construed." *Gen. Ret. Sys. of the City of Detroit v. Dixon (In re Dixon)*, 525 B.R. 827, 840 (Bankr. N.D. Ga. 2015).

The Supreme Court in *Husky International Electronics, Inc. v. Ritz* defined "actual fraud" in the context of § 523(a)(2)(A) as follows:

> This Court has historically construed the terms in § 523(a)(2)(A) to contain the "elements that the common law has defined them to include." "Actual fraud" has two parts: actual and fraud. The word "actual" has a simple meaning in the context of common-law fraud: It denotes any fraud that "involves moral turpitude or intentional wrong." "Actual" fraud stands in contrast to "implied" fraud or fraud "in law," which describe acts of deception that "may exist without the imputation of bad faith or immorality." Thus, anything that counts as "fraud" and is done with wrongful intent is "actual fraud."

578 U.S. 356, 360 (2016) (citation modified). "The term 'actual fraud' includes fraudulent conveyances." *Lariat Cos., Inc. v. Wigley (In re Wigley)*, 15 F.4th 1208, 1211 (8th Cir. 2021) (citations omitted).

The Supreme Court in *Husky* also addressed § 523(a)(2)(A) in the context of a recipient of a fraudulent transfer:

> It is of course true that the transferor does not "obtain" debts in a fraudulent conveyance. *But the recipient of the transfer—who, with the requisite intent, also commits fraud—can "obtain" assets "by" his or her participation in the fraud. If that recipient later files for bankruptcy, any debts "traceable to" the fraudulent conveyance will be nondischargable under § 523(a)(2)(A).* Thus, at least sometimes a debt "obtained by" a fraudulent conveyance scheme could be nondischargeable under § 523(a)(2)(A). Such circumstances may be rare because a person who receives fraudulently conveyed assets is not necessarily (or even likely to be) a debtor on the verge of bankruptcy, but they make clear that fraudulent conveyances are not wholly incompatible with the "obtained by" requirement.

578 U.S. at 365 (emphasis added) (citation modified).

The Eighth Circuit has interpreted the applicability of § 523(a)(2)(A) to the recipient of a fraudulent transfer as follows:

> A transferee who receives a fraudulent transfer with the requisite wrongful intent commits "actual fraud," and any debts traceable to the fraudulent transfer are excepted from discharge. The transferee's intent must "involve moral turpitude or intentional wrong." The exception does not cover implied fraud, which "describes acts of deception that 'may exist without the imputation of bad faith or immorality.'"

*Wigley*, 15 F.4th at 1212 (citation modified).

An underlying state-court judgment imposing liability under a Uniform Fraudulent Transfer Act on the recipient of a fraudulent transfer who did not take the transfer in good faith ignorance of the fraud does not establish actual fraud under § 523(a)(2)(A). *Dottore v. Wagner (In re Wagner)*, Ch. 13 Case No. 25-81284, Adv. No.

26-8006, 2026 Bankr. LEXIS 2003, 2026 WL 2323027, at *11 (Bankr. D. Neb. Aug. 10, 2026); *see also Turney v. Vulaj (In re Vulaj)*, 651 B.R. 310, 315 (Bankr. S.D. Cal. 2023) (denying a motion for summary judgment on a § 523(a)(2)(A) claim for actual fraud in the context of an underlying judgment based on California's Uniform Voidable Transactions Act when the transferee did not take the transfers in good faith). In *Wagner*, the receiver of a company that was a Ponzi scheme sued the debtors in state court asserting that the transfers the debtors received from the company were fraudulent transfers under the Ohio Uniform Fraudulent Transfer Act. 2026 WL 2323027, at *2. The receiver obtained a partial summary judgment against debtor Andrew Wagner as the state court found the transfers to him were fraudulent under Ohio law and he did not prove his good faith defense under Ohio Rev. Code § 1336.08(A).[4] *Id.* The debtors subsequently filed for bankruptcy, and the receiver filed a dischargeability action against the debtors under § 523(a)(2)(A) for actual fraud. *Id.* at *1.

The bankruptcy court held that the state-court partial summary judgment against debtor Andrew Wagner did not establish the necessary fraudulent intent required for actual fraud under § 523(a)(2)(A). *Id.* at *10-11. In reaching its decision, the court noted that "[a] failure to prove good faith is not an affirmative finding of moral turpitude or intentional wrongdoing, which § 523(a)(2)(A), as construed in

[4] Ohio Rev. Code § 1336.08(a) states: "A transfer or an obligation is not fraudulent under division (A)(1) of section 1336.04 of the Revised Code against a person who took in good faith and for a reasonably equivalent value or against any subsequent transferee or obligee." Ohio Rev. Code § 1336.4(A)(1) states in pertinent part: "A transfer made or an obligation incurred by a debtor is fraudulent as to a creditor . . . if the debtor made the transfer or incurred the obligation in either of the following ways: (1) With actual intent to hinder, delay, or defraud any creditor of the debtor."

*Husky* and *Wigley*, requires." *Id.* at *11.

Here, the issue before Judge Durkin was not identical to a claim for actual fraud under § 523(a)(2)(A). Judge Durkin did not address in his findings of fact and conclusions of law whether Mr. Courtright possessed "moral turpitude or intentional wrongdoing" with his receipt of sales commissions for TGC. Instead, Judge Durkin focused on whether Kenneth Courtright had actual intent to defraud TGC's creditors. Judge Durkin's analysis of Mr. Courtright was whether he gave reasonably equivalent value for the sales commissions he received from TGC and whether Mr. Courtright took these sales commissions in good faith ignorance of TGC and Kenneth Courtright defrauding TGC's creditors. As noted in *Wagner*, a finding of a lack of good faith in the receipt of fraudulent transfers does not establish the necessary fraudulent intent required for actual fraud under § 523(a)(2)(A). Thus, the issue before Judge Durkin was not identical to the Receiver's claim for actual fraud under § 523(a)(2)(A).[5]

On top of the issue being different, Judge Durkin's findings of fact and conclusions of law do not have sufficient detail regarding Mr. Courtright's intent when he received the sales commissions from TGC. For a judgment to be entitled to a preclusive effect, the "judgment should have sufficient detail to enable a subsequent court to have a clear understanding of the prior court's ruling without having to

---

[5] Although the Court is not applying the federal law of collateral estoppel, the outcome would be the same. "When issues in the bankruptcy proceeding 'closely mirror' issues in the prior action, the issues are sufficiently identical for purposes of federal collateral estoppel." *In re Moir*, 291 B.R. at 891-92 (citation omitted). Whether Mr. Courtright gave reasonably equivalent value for his sales commissions from TGC and whether he took them in good faith ignorance of TGC's fraud does not "closely mirror" the issue of whether Mr. Courtright had the necessary wrongful intent when he received the sales commissions from TGC.

speculate about the scope of the prior court's findings of fact or conclusions of law." *Yust v. Henkel (In re Henkel)*, 490 B.R. 759, 781-82 (Bankr. S.D. Ohio 2013) (citation omitted). In the absence of detailed findings regarding Mr. Courtright's intent, this Court is left to speculate about the scope of Judge Durkin's findings of fact and conclusions of law. The Court declines to do so.

**3. *Bartenwerfer* does not apply to the underlying judgment.**

The Receiver cites to *Bartenwerfer* and *PRN Real Estate & Investors, Ltd. v. Cole*, 85 F.4th 1324 (11th Cir. 2023) in her Reply to support her position that since Mr. Courtright was found liable under state law, there is no need to show that he possessed fraudulent intent—i.e., Mr. Courtright's intent is not part of the § 523(a)(a)(A) analysis. [Reply 1-3, Adv. Proc. Dkt. No. 23]. Mr. Courtright argues in his Surreply [sic] that *Bartenwerfer* and *PRN* are not applicable because in those cases "actual fraud was imputed upon the debtor via the underlying claim and relationship context." [Surreply 1, Adv. Proc. Dkt. No. 24].

*Bartenwerfer* addressed the dischargeability of a California state-court judgment against business partners. 598 U.S. at 72. The Bartenwerfers filed for Chapter 7 bankruptcy after the California judgment was rendered against them, and the creditor holding the judgment filed a dischargeability action under § 523(a)(2)(A). *Id.* at 73. The Supreme Court ultimately affirmed the Ninth Circuit's decision that Kate Bartenwerfer's judgment debt was nondischargeable under § 523(a)(2)(A) even though she did not commit the fraud. *Id.* at 83.

In reaching its decision, the Court noted that "sometimes a debtor is liable for fraud that she did not personally commit—for example, deceit practiced by a partner

or an agent. . . . Written in the passive voice, § 523(a)(2)(A) turns on how the money was obtained, not who committed fraud to obtain it." *Id.* at 72. The Court also noted that

> § 523(a)(2)(A) does not define the scope of one person's liability for another's fraud. That is the function of the underlying law—here, the law of California. Section 523(a)(2)(A) takes the debt as it finds it, so if California did not extend liability to honest partners, § 523(a)(2)(A) would have no role to play.

*Id.* at 81-82.

It could seem that *Husky* and *Bartenwerfer* conflict as *Bartenwerfer* provides that a debt can be nondischargeable under § 523(a)(2)(A) even if the recipient of the transfer did not commit fraud. Courts reconciling these two cases have found, however, that they do not conflict. *Wagner*, 2026 WL 2323027, at *3; *Dottore v. Scheibal (In re Scheibal)*, Ch. 13 Case No. 24-55161, Adv. No. 85-1190, 2026 Bankr. LEXIS 1203, 2026 WL 1379193, at *7-10 (Bankr. S.D. Ohio May 14, 2026); *Vulaj*, 651 B.R. at 314. Instead, there are two ways a debtor who is a transferee can be denied a discharge for actual fraud under § 523(a)(2)(A):

> Route 1: *Bartenwerfer*. The underlying law makes the fraud the debtor's own, so the debt is itself a debt for fraud. Section 523(a)(2)(A) "takes the debt as it finds it." *Bartenwerfer v. Buckley*, 598 U.S. 69, 81-82 (2023).
>
> Route 2: *Husky*. The debtor participated in the fraud with the requisite intent, thereby "obtaining" the money "by" that participation. *Husky Int'l Elecs., Inc. v. Ritz*, 578 U.S. 355, 365 (2016).

*Wagner*, 2026 WL 2323027, at *1.

Even without a conflict between *Husky* and *Bartenwerfer*, courts disagree about the scope of *Bartenwerfer*. Some courts have limited the parameters of *Bartenwerfer* to agency and partnership contexts. *Scheibal*, 2026 WL 1379193, at *9-10 (collecting cases); *Vulaj*, 651 B.R. at 314-15. Other courts have applied *Bartenwerfer* to broader contexts where the underlying state law imposes liability for the debt of another. *Wagner*, 2026 WL 2323027, at *3; *Panjwani v. Khan (In re Khan)*, 652 B.R. 552, 562-65 (Bankr. S.D. Fla. 2023) (applying *Bartenwerfer* to a state-court judgment for civil conspiracy where the defendants were jointly and severally liable). This Court adheres to the latter view as the majority opinion in *Bartenwerfer* did not expressly limit its holding to partnership or agency cases. *See* 598 U.S. at 72, 81-83. Even by adhering to the latter view, *Bartenwerfer* does not encompass the underlying judgment against Mr. Courtright.

*Bartenwerfer* does not apply here as the Illinois Uniform Fraudulent Act does not impute liability for fraud upon Mr. Courtright. The court in *Wagner* noted that the Ohio Uniform Fraudulent Transfer Act did not impute fraud on the debtor for the transfer from the Ponzi scheme to the debtor. 2026 WL 2323027, at *4. The court reasoned that “[a] transferee's liability under the act is an independent, restitutionary obligation to disgorge value received. It is not imputed liability for fraud.” *Id.* (citation omitted). The Receiver does not argue that the Illinois Uniform Fraudulent Act imputes TGC’s and Kenneth Courtright’s fraud onto Mr. Courtright, and the Court has not found any authority that provides the Illinois Uniform Fraudulent Act imputes TGC’s and Kenneth Courtright’s fraud onto Mr. Courtright.

Judge Durkin's findings of fact and conclusions of law are also silent on whether TGC's and Kenneth Courtright's fraud were imputed onto Mr. Courtright. Thus, *Bartenwerfer* does not apply to the Illinois district court judgment.

*PRN* also does not extend *Bartenwerfer* to this proceeding. In *PRN*, the debtor transferred $4 million from one of his entities to an account held by him and his wife to shield the money from the debtor's creditors. 85 F.4th at 1329. In analyzing § 523(a)(2)(A), the court noted that

> sometimes the debtor *receives* a fraudulent transfer. That's where § 523(a)(2) kicks in. If someone sends the bankruptcy debtor money to fraudulently avoid his debt, the party owed the money can have the debt excepted from the recipient debtor's discharge—*if the creditor can show that, under state law, the recipient took on the sender's debt.*

85 F.4th at 1342 (emphasis added).

The court also determined that "for a creditor to except a debt under § 523(a)(2)(A), the creditor must show that (a) the bankruptcy debtor obtained money, property, or services by actual fraud; and, (b) the debt to be excepted resulted from the debtor's fraudulent receipt." *Id.* at 1346-47 (footnote omitted).[6] The court noted in a footnote at the end of the previous quote that "[a]s long as fraud was involved when the debtor obtained the assets, the debtor need not be the party who committed the fraud for § 523(a)(2)(A) to apply." *Id.* at 1347 n.6 (citing *Bartenwerfer*, 598 U.S. at 83).

[6] The court in *Wagner* analyzed the *PRN* case and the two elements necessary for a § 523(a)(2)(A) claim as follows: "The second requirement is satisfied here. The first is not. Whether a debtor who did not commit the fraud nevertheless obtained money 'by actual fraud' turns on whether the underlying law makes the debt a debt for fraud. California law did. Ohio's act does not." 2026 WL 2323027, at *9.

At issue in *PRN* was a Nevada alter ego statute that provided that an individual could not be personally liable for a corporation's debt unless the individual acted as the alter ego of the corporation. *Id.* at 1348. The court noted that the Nevada Supreme Court determined that the alter ego of the corporation becomes a debtor "when the alter ego violates Nevada's version of the Uniform Fraudulent Transfer Act." *Id.* at 1348-49. Ultimately, the court held that the plaintiff's § 523(a)(2)(A) claim was a viable *Husky* claim because the debtor transferred funds from one of his companies to his tenants by the entireties account to shield it from collection which could make him liable for his company's debt under the Nevada alter ego statute. *Id.* at 1347-49.

*PRN* does not apply here as the Illinois Uniform Fraudulent Transfer Act does not result in Mr. Courtright taking on the debt of TGC and Kenneth Courtright. The analysis in *Wagner* on this issue under the Ohio Uniform Fraudulent Transfer Act is instructive: "Ohio law does not make the Wagners liable for Dente's and Buckham's fraud. It makes them liable for holding money that is not theirs and makes them disgorge the value. Those are different debts." 2026 WL 2323027, at *4. Judge Durkin did not find that Mr. Courtright was liable for the debts of TGC and Kenneth Courtright, only that Mr. Courtright was liable, under the Illinois Uniform Fraudulent Transfer Act, for sales commissions paid to him by TGC after November 3, 2017. Thus, *PRN* does not apply to the Illinois district court judgment.

## III. Conclusion

Accordingly, it is hereby

**ORDERED** that the Receiver's Motion is **DENIED**.

The Clerk is directed to serve a copy of this Order on counsel for the Receiver, counsel for Mr. Courtright, and the Chapter 7 Trustee.

**[END OF DOCUMENT]**